IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Demaris Belanger
87 Magnolia Drive
Stafford, VA 22556
*Plaintiff,*

v.

Kristi Noem, Secretary,
U.S. Department of Homeland Security
2707 Martin Luther King Jr Ave SE,
Washington, DC 20528
*Defendant.*

Case No. _____

Jury Trial Demanded

FEDERAL COMPLAINT

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as

   this case arises under the laws of the United States, including Title VII of the Civil Rights

   Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

2. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3)

   because the events or omissions giving rise to the claims occurred within the District of

   Columbia and because Defendant maintains offices and conducts business within this

   District.

3. Plaintiff has satisfied all administrative prerequisites to suit, including timely filing a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC), Washington Field Office, under EEOC No. 570-2024-00552X and Agency No. 02154-2023, and receiving a Notice of Right to Sue (if applicable).

4. This filing is within the time permitted by law following the conclusion of the administrative process.

5. Plaintiff, Demaris Belanger ("Plaintiff"), is an individual residing at 87 Magnolia Drive Stafford VA, who at all relevant times was employed by the U.S. Department of Homeland Security, Federal Emergency Management Agency ("FEMA"), in the position of Business Operations Chief, GS-14, located in The District of Columbia.

6. Plaintiff is African American and, during all relevant times, was qualified for her position and performed her duties satisfactorily.

7. Plaintiff engaged in protected activity under federal anti-discrimination laws, including the filing of formal EEO complaints in 2016 and 2019.

8. Defendant, Kristi Noem ("Defendant"), is the Secretary of the U.S. Department of Homeland Security, with a principal office address at 2707 Martin Luther King Jr Ave SE, Washington, DC 20528. Defendant is sued in his official capacity as the head of a federal agency. At all relevant times, the Department of Homeland Security was Plaintiff's employer within the meaning of Title VII and other applicable federal statutes.

9. At all relevant times, Defendant acted through his agents, employees, and representatives, including but not limited to managers and supervisors at FEMA, and all such actions were taken within the scope of their employment and under color of federal law.

10. This is an action for declaratory, injunctive, and monetary relief to redress unlawful employment practices committed by Defendant against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, and related federal statutes.

11. Plaintiff alleges that, beginning on or about November 30, 2022, and continuing through at least July 2023, Defendant, through its agents and employees, engaged in a pattern of discrimination and retaliation against Plaintiff on the basis of her race (African American) and in retaliation for her prior protected EEO activity.

12. The adverse actions taken against Plaintiff by Defendant's management officials at FEMA included, but were not limited to: (a) failing to pay Plaintiff's registration fee for the National Asian Peace Officer Association Conference; (b) failing to purchase a booth for the same conference, thereby preventing Plaintiff from representing FEMA; (c) neglecting to address Plaintiff's performance plan ratings for multiple quarters; (d) cancelling and refusing to approve Plaintiff's official travel to meet with law enforcement personnel; and (e) withholding allocated funding and office resources necessary for Plaintiff to perform her duties.

13. These actions, individually and collectively, interfered with Plaintiff's job responsibilities, diminished her authority and professional standing within the agency, and created a hostile work environment.

3

14.  Plaintiff further alleges that these adverse actions were motivated by discriminatory animus based on her race and by retaliatory intent in response to her prior EEO complaints, which were known to management officials.

15.  The cumulative effect of Defendant's conduct impeded Plaintiff's ability to perform her job, damaged her professional reputation and advancement opportunities, and deterred her from engaging in further protected activity.

16.  Plaintiff asserts that Defendant's conduct constituted not only discrete acts of discrimination and retaliation, but also a broader pattern of interference with her job responsibilities and a diminution of her authority, in violation of federal law.

17.  As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer loss of professional opportunities, emotional distress, reputational harm, and other damages.

18.  Plaintiff seeks all available relief under federal law, including but not limited to injunctive relief to prevent further discrimination and retaliation; reinstatement or restoration of lost job responsibilities and authority; back pay and compensatory damages for lost wages, benefits, and emotional distress; attorney's fees and costs; and any other relief the Court deems just and proper.

19.  At all relevant times, Plaintiff was employed by the U.S. Department of Homeland Security, Federal Emergency Management Agency (FEMA), in the position of Business Operations Chief, GS-14, located in the District of Columbia.

20.  Plaintiff is African American and was qualified for her position and performed her duties satisfactorily during all relevant periods.

21.  Plaintiff's office, the Office of Law Enforcement Engagement & Integration ("OLEEI"), was the only office in the division with minorities when Mr. Afman became the acting supervisor.

22.  Plaintiff engaged in protected activity under federal anti-discrimination laws, including the filing of formal EEO complaints in 2016 and 2019.

23.  Management officials, including but not limited to Jeffery Afman (Caucasian), Michelle Carter, and Sarah Boerchig (Caucasian/White), were aware of Plaintiff's prior EEO activity.

24.  Plaintiff's prior complaints, including those against Corey J.Coleman, the Agency's former Chief Human Capital Officer, were widely known within the agency.

25.  On or about July 31, 2023, Plaintiff was notified that the registration fee for the National Asian Peace Officer Association (NAPOA) Conference had not been paid by management.

26.  Plaintiff had submitted the necessary paperwork for conference attendance in March 2022 and repeatedly followed up with management via email regarding the status of her request.

27.  Despite Plaintiff's proactive efforts and numerous communications, management failed to respond, resulting in the non-payment of the registration fee.

28.  As a direct result of the non-payment, Plaintiff was unable to attend the NAPOA Conference which excluded her from participating in high-level professional discussions,

prevented her from representing FEMA at a major law enforcement event, and damaged her credibility and reputation within the agency and the broader law enforcement community.

29.  Plaintiff's inability to attend the conference diminished her involvement in high-level discussions, prevented her from participating in external professional activities, and tarnished her credibility and reputation within the agency and the broader law enforcement community.

30.  Plaintiff believes that race was a factor in management's failure to pay the registration fee, as her office is the only one in the division with minorities.

31.  Plaintiff also attributes the adverse action to retaliation for her prior EEO activity, stating that management was aware of her protected conduct.

32.  On or about July 18, 2023, Plaintiff was notified by the law enforcement association that the booth for the National Asian Peace Officer Association (NAPOA) Conference had not been purchased by management.

33.  Plaintiff had diligently followed all required procedures for the booth payment, including submitting necessary paperwork and making timely inquiries to management regarding the status of the booth purchase.

34.  Management failed to respond to Plaintiff's communications, resulting in the booth remaining unpurchased and further preventing Plaintiff from representing FEMA at the NAPOA Conference.

35.  As a direct result, Plaintiff was prevented from representing FEMA at the NAPOA Conference, which further diminished her professional standing and visibility within the agency and the law enforcement community.

36.  The underlying facts for this incident are substantially identical to those of the registration fee issue, and Plaintiff attributes the same discriminatory and retaliatory motives to management's conduct.

37.  During June 2023, Plaintiff made persistent attempts to obtain her quarterly performance evaluations for the first three quarters of the FY23 Performance Plan, specifically from Mr. Afman, who was acting as her first-line supervisor at the time.

38.  Plaintiff's inquiries regarding her performance plan ratings were either ignored or inadequately addressed by management.

39.  Instead of providing a legitimate response, Mr. Afman referred Plaintiff to Labor and Employee Relations (LER) and only entered her ratings into the performance management system (FedHR) much later.

40.  The absence of timely performance ratings jeopardized Plaintiff's career progression, as it precluded her from receiving promotions or applying for other positions.

41.  Plaintiff believes that both race and retaliation for prior EEO activity were motivating factors in management's failure to address her performance evaluations.

42.  In or around March 2023, Plaintiff's official travel to the Center for Domestic Preparedness (CDP) was cancelled and not approved by management, purportedly due to lack of payment.

43.  Plaintiff had arranged to travel to CDP to meet with law enforcement personnel as part of her official duties and submitted the necessary travel paperwork.

44.  Upon learning of the cancellation, Plaintiff made multiple inquiries to management seeking clarification and resolution.

45.  Management failed to provide any substantive response or justification for the cancellation, but management failed to provide any substantive response or justification for the cancellation.

46.  The lack of communication from management resulted in missed professional opportunities and strained relationships with law enforcement personnel, further diminishing Plaintiff's authority and effectiveness in her role.

47.  Plaintiff was told by Mr. Afman that she was the Senior Official for the OLEEI, but on Mr. Afman's affidavit, he falsely claimed he never stated this information.

48.  Plaintiff attributes the cancellation of her official travel to discriminatory and retaliatory motives, noting that after the retirement of her previous supervisor, Mr. Hylton, she was ignored by management.

49.  Plaintiff further points to her minority status and prior EEO activity as factors in the adverse treatment she experienced from management officials.

50.  Beginning on or about November 30, 2022, and continuing to the present, management withheld allocated funding and failed to respond to Plaintiff's numerous email requests regarding the budget, status updates, and office resources.

51.  Plaintiff made repeated documented attempts to obtain necessary resources, including conference fees, booth fees, travel funds, and contract support, all of which were denied or ignored by management.

52.  The responsible officials for this conduct included Mr. Afman and the Budget Team.

53.  The withholding of resources hindered Plaintiff's ability to fulfill her job duties and resulted in the loss of contract support, further impeding her performance and professional advancement.

54.  Plaintiff believes that these actions were motivated by both her race and retaliation for her prior EEO activity.

55.  The adverse actions described above—including exclusion from conferences, denial of resources, neglect of performance evaluations, cancellation of official travel, and withholding of funding—were not isolated incidents, but part of a pattern of conduct by management officials designed to interfere with Plaintiff's job responsibilities and diminish her authority.

56.  The cumulative effect of these actions has been to marginalize Plaintiff within the agency, damage her professional reputation, and deter her from engaging in further protected activity.

57.  As a result, Plaintiff's ability to perform her job and advance her career has been undermined, and she has suffered significant harm, including lost professional opportunities, emotional distress, and reputational damage.

58.  Elan Darlington, former Office of the Administrator Executive Officer, intervened in Plaintiff's active EEO case, which no one should have been aware of outside of the Office of Equal Rights.

59.  Plaintiff's duties were removed and reassigned to the Office of the Administrator business management unit without explanation.

60.  Plaintiff was "turkey farmed" in a silo for two years, experiencing profound isolation, undervaluation, and professional stagnation.

61.  Plaintiff suffered financial harm when the agency refused to reimburse her voucher to a law enforcement conference in Reno, Nevada at the direction of her current supervisor, Perry Tarrant.

### Plaintiff Issued a Reprimand

62.  On or about January 31, 2025, as a form of harassment, Plaintiff was issued a permanent Official Reprimand by Mr. Tarrant for "Conduct Unbecoming a Federal Employee."

63.  The reprimand contended On February 7, 2024, Belanger was counseled regarding a lack of interpersonal skills and communication tone. The reprimand describes an incident where Belanger abruptly left a work-related discussion to confront a colleague, which was considered inappropriate.

64.  Belanger acknowledged running out to introduce herself to a colleague and asking why he had not responded to her emails and that her tone may have been slightly elevated due to frustration, but this was not the kind of behavior that warranted a Reprimand and at no point did Mr. Tarrant mention interpersonal skills or counsel her about the matter at that time .

65.  The reprimand stated that Belanger's lack of interpersonal skills and/or communication tone was discussed on multiple occasions, including during a Second Quarter Review on July 12, 2024.

66.  However, no meeting occurred on this date and Mr. Tarrant avoided communication with the Plaintiff for several months.

67.  The Reprimand stated that on July 29, 2024, Belanger sent emails to her supervisor that were deemed unprofessional and disrespectful, including comments questioning leadership decisions, budget issues, and the handling of performance ratings.

68.   However, Belanger's emails were always direct and to the point, and that the referenced email was a response to unresolved grievances, not a demonstration of unprofessionalism.

69.  The Reprimand stated that on October 2, 2024, Belanger responded to a request for information with an email that was considered unprofessional and disrespectful, including stating she did not appreciate the supervisor's tone and referencing previous lack of responses to her own emails.

70.  However, regarding said response, Mr. Tarrant's request was unnecessary because Belanger was no longer performing law enforcement duties, had already provided the information, and that he could have found it himself.

71.  The reprimand also notes that by November 17, 2024, Belanger's professional development and interpersonal interactions were discussed again, and that these issues were raised during her third Quarter Review .

72.  Regarding said allegation, Belanger was on leave at this time and had no interactions with Mr. Tarrant from September 2024 until January 2025.

73.  The Reprimand stated that there was prior counseling by Tarrant on these Reprimand issues.

74.  Belanger had not been previously counseled regarding the charges in the reprimand and sthere was no communication about these issues before receiving the reprimand.

**Plaintiff Issued a Suspension**

75.  On or about March 17, 2025, Complainant was issued a 3-day suspension proposal.

76.  Belanger failed to follow instructions. Perry Tarrant ordered her, to attend a meeting at 1:00 PM/EST that same day and despite being informed that failure to attend would subject her to disciplinary action, Belanger did not attend.

77.  Perry Tarrant's emails never discuss the meeting's purpose, other than to "discuss an issue from last year." He didn't permit her attorney to attend.

78.  In his EEO affidavit, Perry Tarrant describes it as "employee supervisor performance discussion."

79.  The meeting Plaintiff was instructed to attend was not a legitimate performance discussion. Perry Tarrant failed to follow OPM and FEMA performance management policies, including requirements for regular performance reviews, progress discussions, and the establishment of performance plans.

80.  Tarrant reserved a conference room for five people for this meeting, which led Plaintiff to request the presence of her attorney. She was told the meeting was only between her and her supervisor, and her request for attorney participation was denied.

81.  **The FEMA Manual 255-1-1, for FEMA Employee Performance Management Program** states: **Ongoing Feedback and Progress Reviews**: Supervisors are required to provide employees with ongoing feedback, coaching, and to schedule, conduct, and document progress reviews in a timely manner. At least one progress review is required at approximately the mid-point of the appraisal period, and it must be documented, with the employee given an opportunity to review and comment.

82.  It also states: **Addressing Poor Performance**: If a supervisor determines that an employee is performing poorly in one or more critical elements, appropriate action must be taken promptly. Before taking adverse action (such as reduction in grade or removal), the supervisor must consult with Labor and Employee Relations (LER) and ensure compliance with applicable regulations. The employee must be given a reasonable opportunity to demonstrate acceptable performance.

### Issues With Performance Plans and Ratings, 2024-2025

83.  OPM/FEMA requires a new performance plan to be issued 1/1 every year. Belanger d/n get one for 2024, so she created her own metrics. Perry Tarrant failed to respond to any message Belanger sent him.

84.  Belanger saw her final rating in the system. Perry Tarrant had reviews w/ her for Q1 and Q2, but nothing since. Belanger got achieved expectations, lowest ever.

85.  Perry Tarrant claims he invited Belanger to a meeting for 2024 review and she declined. There is just no such email in the ROI 2.

86.  Brian Givens was Perry Tarrant's supervisor in 2025.

87.  For the first half of 2025, the Plaintiff did not get a Performance Plan for 2025.

88.  The Plaintiff had no real work assigned to her from Tarrant for 2025.

89.  The Plaintiff complained to Givens about the aforesaid issues.

90.  Givens met with Tarrant about the Plaintiff not receiving any Performance Plan for 2025.

91.  The result of that meeting was that the Plaintiff was told to do her own metric.

92.  The Plaintiff created her own work metrics for 2025.

93.  Perry Tarrant finally issued the plan in July 2025.

94. There was no assigned work on the 2025 Performance Plain other than what the Belanger could generate on her own.

95. The Plaintiff in 2025 underwent acquisition training to retain her core three certification.

96. In 2025, the Plaintiff took additional courses and training.

97. In 2025, the Plaintiff worked on workload analysis and templates for disaster response.

98. This situation continues to the present day.


**Count I: Race Discrimination in Violation of Title VII**

99. Plaintiff realleges and incorporates by reference paragraphs 1 through 55 as if fully set forth herein.

100. Plaintiff is a member of a protected class based on her race (African American).

101. Plaintiff is an African American woman who has been employed by FEMA for over 16 years and has consistently received "Achieved Excellence" ratings on her performance evaluations prior to the events described in this complaint.

102. Plaintiff suffered adverse employment actions.

103. Defendant, through its agents and employees, failed to pay Plaintiff's registration fee for the National Asian Peace Officer Association Conference, failed to purchase a booth for the same conference, neglected to address Plaintiff's performance plan ratings for multiple quarters, cancelled and refused to approve Plaintiff's official travel to meet with law enforcement personnel, and withheld allocated funding and office resources necessary for Plaintiff to perform her duties.

104. The circumstances give rise to an inference of discrimination based on Plaintiff's race.

105. Plaintiff's office, OLEEI, was the only office in the division with minorities when Mr. Afman became the acting supervisor, and it was not afforded the same care and attention as other offices.

106. Similarly situated employees outside Plaintiff's protected class did not experience comparable denials of resources or support.

107. After the retirement of her supportive supervisor, Mr. Hylton, Plaintiff was increasingly ignored by management.

108. Plaintiff's duties were removed and reassigned to others without explanation.

109. Plaintiff was "turkey farmed" in a silo for two years, experiencing profound isolation, undervaluation, and professional stagnation.

## Interference with Job Responsibilities and Diminution of Authority

110. Plaintiff realleges and incorporates by reference paragraphs 1 through 92 as if fully set forth herein.

111. Federal law prohibits not only discrete acts of discrimination and retaliation, but also conduct that materially interferes with an employee's ability to perform her job duties and diminishes her authority in the workplace.

112. Defendant, through its agents and employees, engaged in a pattern of conduct—including the failure to pay conference fees, failure to purchase a conference booth, neglect of performance evaluations, cancellation of official travel, and withholding of resources—that collectively and individually interfered with Plaintiff's job responsibilities and diminished her authority as Business Operations Chief.

113. These actions prevented Plaintiff from representing FEMA at professional events, hindered her ability to manage her office's operations, and undermined her standing among colleagues and external partners.

114. The cumulative effect of Defendant's conduct was to marginalize Plaintiff within the agency, erode her decision-making authority, and impede her ability to fulfill her official duties.

115. Plaintiff alleges that these actions were motivated by discriminatory animus based on her race and by retaliatory intent in response to her prior protected EEO activity.

116. Defendant's conduct constitutes unlawful interference with Plaintiff's job responsibilities and a diminution of her authority, in violation of federal law.

117. During June 2023, management, specifically Plaintiff's acting first-line supervisor, Mr. Afman, failed to address Plaintiff's repeated inquiries regarding her performance plan ratings for the first three quarters of the FY23 Performance Plan.

118. Plaintiff made persistent efforts to obtain her quarterly performance evaluations, which are essential for career advancement, eligibility for promotions, and maintaining a record of satisfactory job performance.

119. Despite these efforts, management either ignored Plaintiff's requests or provided only perfunctory responses, with Mr. Afman at one point referring Plaintiff to Labor and Employee Relations (LER) rather than addressing the substance of her concerns.

120. The performance ratings were eventually entered into the Agency's performance management system (FedHR) much later than required, after significant delay.

121. The failure to provide timely and substantive performance evaluations had concrete adverse consequences for Plaintiff, including rendering her ineligible for promotions, unable to apply for other positions within the Agency, and deprived of the opportunity to demonstrate her qualifications and achievements.

122. Plaintiff alleges that this neglect was not accidental or isolated, but rather part of a broader pattern of retaliatory conduct in response to her prior protected EEO activity, and was also motivated by discriminatory animus based on her race.

123. Plaintiff's office was the only office in the division with minorities, and she was treated differently than similarly situated employees outside her protected class or who had not engaged in protected activity.

124. Defendant's conduct in failing to address Plaintiff's performance and evaluation issues constitutes unlawful retaliation and discrimination in violation of Title VII.

125. As a result of Defendant's actions, Plaintiff suffered tangible harm, including loss of professional opportunity, emotional distress, and damage to her professional reputation.

126. In or around March 2023, Plaintiff's official travel to the Center for Domestic Preparedness (CDP) was cancelled and not approved by management, purportedly due to lack of payment.

127. Plaintiff had arranged to travel to CDP to meet with law enforcement personnel as part of her official duties as Business Operations Chief and submitted the necessary travel paperwork.

128. Upon learning of the cancellation, Plaintiff made multiple inquiries to management seeking clarification and resolution, but management failed to provide any substantive response or justification for the cancellation.

129. As a result of the cancelled travel, Plaintiff missed professional opportunities and experienced strained relationships with law enforcement personnel, which further diminished her authority and effectiveness in her role.

130. Plaintiff experienced a marked change in management's responsiveness and support after the retirement of her previous supervisor, Mr. Hylton, and was increasingly ignored by responsible officials, including but not limited to Jeffery Afman.

131. Beginning on or about November 30, 2022, and continuing to the present, management withheld allocated funding and failed to respond to Plaintiff's numerous email requests regarding the budget, status updates, and office resources.

132. Plaintiff made repeated documented attempts to obtain necessary resources, including conference fees, booth fees, travel funds, and contract support, all of which were denied or ignored by management officials, including Mr. Afman and the Budget Team.

133. The withholding of resources hindered Plaintiff's ability to fulfill her job duties, resulted in the loss of contract support, and further impeded her performance and professional advancement.

134. Plaintiff was treated differently than similarly situated employees outside her protected class or who had not engaged in protected activity, who did not experience comparable denials of resources or support.

135. Plaintiff alleges that the withholding of resources by Defendant was motivated by discriminatory animus based on her race and by retaliation for her prior EEO activity.

136. The denial of resources hindered Plaintiff's ability to fulfill her job duties, resulted in the loss of contract support, and impeded her professional advancement.

137. Defendant's conduct constitutes unlawful discrimination and retaliation in violation of Title VII.

138. In addition to the discrete acts described above, Defendant, through its agents and employees, engaged in a persistent and coordinated pattern of conduct that resulted in substantial interference with Plaintiff's job responsibilities and a significant diminution of her authority as Business Operations Chief.

139. Management's actions included, but were not limited to: excluding Plaintiff from critical professional opportunities by failing to pay her registration fee for the National Asian Peace Officer Association Conference and failing to purchase a booth for the same event; withholding allocated funding, contract support, and essential office resources despite Plaintiff's repeated and documented requests; neglecting to provide timely and substantive performance evaluations; and cancelling and refusing to approve Plaintiff's official travel to meet with law enforcement personnel.

140. These actions, taken together, directly impeded Plaintiff's ability to manage her office's operations, participate in professional development, and maintain the resources and support necessary to execute her responsibilities.

141. The cumulative effect of Defendant's conduct was to marginalize Plaintiff within the agency, erode her decision-making authority, undermine her credibility both internally and externally, and deter her from engaging in further protected activity.

142. Plaintiff alleges that the diminution of her authority and interference with her job responsibilities were motivated by discriminatory animus based on her race and by retaliatory intent in response to her prior protected EEO activity.

143. Defendant's conduct constitutes unlawful interference with Plaintiff's job responsibilities and a diminution of her authority, in violation of federal law.

144. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer significant harm, including lost professional opportunities, emotional distress, reputational damage, and impeded career advancement.

145. On or about July 31, 2023, Plaintiff was notified that the registration fee for the National Asian Peace Officer Association (NAPOA) Conference had not been paid by management.

146. Plaintiff had submitted the required paperwork for conference attendance in March 2022 and, over the ensuing months, made numerous follow-up inquiries to management regarding the status of her request.

147. Despite Plaintiff's diligence and repeated communications, management failed to respond or take action to ensure payment of the registration fee.

148. As a direct result of management's failure to pay the registration fee, Plaintiff was unable to attend the NAPOA Conference.

149. Plaintiff's inability to attend the conference excluded her from participating in high-level professional discussions, prevented her from representing FEMA at a major law enforcement event, and damaged both her credibility and the reputation of her office within the agency and the broader law enforcement community.

150. Plaintiff was compelled to provide an alternative explanation for her absence to the conference organizers, further compounding the professional harm.

151. Plaintiff alleges that management's failure to pay the conference registration fee was motivated by discriminatory animus based on her race (African American) and by retaliatory intent in response to her prior protected EEO activity.

152. Plaintiff's office was the only office in the division with minorities, and Plaintiff had previously filed EEO complaints in 2016 and 2019, which were known to management officials.

153. The responsible management officials, including but not limited to Jeffery Afman, were aware of Plaintiff's protected status and prior complaints.

154. The denial of the conference registration fee was a materially adverse employment action that deprived Plaintiff of professional development opportunities and participation in external events critical to her role.

155. The action was not imposed on similarly situated employees outside Plaintiff's protected class or who had not engaged in protected activity, further evidencing the discriminatory and retaliatory motives underlying management's conduct.

156. Defendant's actions were intentional, willful, and taken with reckless disregard for Plaintiff's federally protected rights.

157. As a result, Plaintiff suffered tangible harm, including loss of professional opportunity, reputational damage, emotional distress, and a diminution of her authority within the agency.

158. Plaintiff seeks all available relief for this claim, including but not limited to injunctive relief, compensatory damages, back pay, and attorney's fees.

**Pattern of Interference with Job Responsibilities and Diminution of Authority**

159. Plaintiff realleges and incorporates by reference paragraphs 1 through 115 as if fully set forth herein.

160. Defendant, through its agents and employees, engaged in a pattern of conduct that interfered with Plaintiff's ability to perform her job duties and resulted in a significant diminution of her authority as Business Operations Chief.

161. This interference was not limited to a single incident, but comprised a series of coordinated actions that, collectively and individually, undermined Plaintiff's professional standing and effectiveness within the agency.

162. Management's actions included, but were not limited to, failing to pay Plaintiff's registration fee for the NAPOA Conference, failing to purchase a booth for the same conference, neglecting to address Plaintiff's performance plan ratings for multiple quarters, cancelling and refusing to approve Plaintiff's official travel to meet with law enforcement

personnel, and withholding allocated funding and office resources necessary for Plaintiff to perform her duties.

163. These actions directly impeded Plaintiff's ability to manage her office's operations, participate in professional development, and maintain the resources and support necessary to execute her responsibilities.

164. The cumulative effect of Defendant's conduct was to marginalize Plaintiff within the agency, erode her decision-making authority, undermine her credibility both internally and externally, and deter her from engaging in further protected activity.

165. Plaintiff alleges that the diminution of her authority and interference with her job responsibilities were motivated by discriminatory animus based on her race and by retaliatory intent in response to her prior protected EEO activity.

166. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer significant harm, including lost professional opportunities, emotional distress, reputational damage, and impeded career advancement.

167. Plaintiff realleges and incorporates by reference paragraphs 1 through 123 as if fully set forth herein.

168. Defendant, through its agents and employees, engaged in a pattern of conduct that interfered with Plaintiff's ability to perform her job duties and resulted in a significant diminution of her authority as Business Operations Chief.

169. Specifically, Defendant failed to pay Plaintiff's registration fee for the National Asian Peace Officer Association Conference, thereby excluding her from a critical professional event and diminishing her visibility and influence in the law enforcement community.

170. Defendant failed to purchase a booth for the same conference, which prevented Plaintiff from representing FEMA and engaging with key external stakeholders.

171. Defendant neglected to address Plaintiff's performance plan ratings for multiple quarters, thereby jeopardizing her eligibility for promotions and career advancement.

172. Defendant cancelled and refused to approve Plaintiff's official travel to meet with law enforcement personnel, resulting in missed opportunities to fulfill essential job responsibilities and maintain professional relationships.

173. Defendant withheld allocated funding and office resources necessary for Plaintiff to perform her duties, including conference fees, travel funds, and contract support, despite Plaintiff's repeated documented requests.

174. These actions, taken together, directly impeded Plaintiff's ability to manage her office's operations, participate in professional development, and maintain the resources and support necessary to execute her responsibilities.

175. The cumulative effect of Defendant's conduct was to marginalize Plaintiff within the agency, erode her decision-making authority, undermine her credibility both internally and externally, and deter her from engaging in further protected activity.

176. Plaintiff alleges that these actions were motivated by discriminatory animus based on her race and by retaliatory intent in response to her prior protected EEO activity. The

responsible management officials, including but not limited to Jeffery Afman, Michelle
Carter, Sarah Boerchig, and the Budget Team, were aware of Plaintiff's protected status and
prior complaints.

177. The interference with Plaintiff's job responsibilities and the diminution of her authority
constitute adverse employment actions under federal law. Defendant's conduct deprived
Plaintiff of the ability to perform her job effectively, advance her career, and maintain her
professional reputation. These harms are actionable and entitle Plaintiff to relief as set forth
herein.

178. Plaintiff seeks all available remedies for this claim, including but not limited to injunctive
relief, compensatory damages, back pay, and attorney's fees.

179. During June 2023, Plaintiff's acting first-line supervisor, Mr. Afman, failed to address
Plaintiff's repeated inquiries regarding her performance plan ratings for the first three
quarters of the FY23 Performance Plan.

180. Plaintiff made persistent efforts to obtain her quarterly performance evaluations, which
are essential for career advancement, eligibility for promotions, and maintaining a record of
satisfactory job performance.

181. Management either ignored Plaintiff's requests or provided only perfunctory responses,
with Mr. Afman at one point referring Plaintiff to Labor and Employee Relations (LER)
rather than addressing the substance of her concerns.

182. The performance ratings were eventually entered into the Agency's performance
management system (FedHR) much later than required, after significant delay.

183. Plaintiff had previously filed EEO complaints in 2016 and 2019, and management officials, including Mr. Afman, were aware of her protected status.

184. The failure to provide timely and substantive performance evaluations had concrete adverse consequences for Plaintiff, including ineligibility for promotions, inability to apply for other positions within the Agency, and deprivation of the opportunity to demonstrate her qualifications and achievements.

185. Plaintiff's office was the only office in the division with minorities, and she was treated differently than similarly situated employees outside her protected class or who had not engaged in protected activity.

186. In or around March 2023, Plaintiff's official travel to the Center for Domestic Preparedness (CDP) was cancelled and not approved by management, purportedly due to lack of payment.

187. Plaintiff had arranged to travel to CDP to meet with law enforcement personnel as part of her official duties as Business Operations Chief.

188. Plaintiff submitted the necessary travel paperwork and, upon learning of the cancellation, made multiple inquiries to management seeking clarification and resolution.

189. Management failed to provide any substantive response or justification for the cancellation.

190. The cancellation of Plaintiff's official travel to the Center for Domestic Preparedness (CDP) had significant adverse consequences for Plaintiff's employment.

191. As a result of the cancelled travel, Plaintiff was deprived of the opportunity to fulfill essential job responsibilities, including building and maintaining relationships with law enforcement partners.

192. Plaintiff was unable to participate in professional development activities and was prevented from representing FEMA at a critical event.

193. The missed engagement hindered Plaintiff's ability to perform her duties and damaged her professional reputation and the standing of her office within the law enforcement community.

194. Plaintiff was required to explain her absence to external stakeholders, which further harmed her credibility and effectiveness.

195. Plaintiff alleges that the cancellation of her travel was motivated by both discriminatory animus based on her race and retaliatory intent in response to her prior protected EEO activity.

196. Plaintiff's office was the only office in the division with minorities, and Plaintiff had previously filed EEO complaints in 2016 and 2019, which were known to management officials.

197. After the retirement of her previous supervisor, Mr. Hylton, Plaintiff experienced a marked change in management's responsiveness and support and was increasingly ignored by responsible officials, including but not limited to Jeffery Afman.

198. Plaintiff specifically asserts that management's knowledge of her protected status and prior EEO activity influenced their decision to cancel her travel and deny her the opportunity to perform her job duties.

199. The cancellation of Plaintiff's official travel was not imposed on similarly situated employees outside Plaintiff's protected class or who had not engaged in protected activity.

200. The denial of travel opportunities impeded Plaintiff's ability to perform her job, advance her career, and maintain her professional reputation, and contributed to her marginalization within the agency.

201. As a result of Defendant's conduct, Plaintiff suffered tangible harm, including loss of professional opportunity, reputational damage, emotional distress, and a further diminution of her authority within the agency.

202. Beginning on or about November 30, 2022, and continuing to the present, Defendant, through its agents and employees, engaged in a pattern of withholding allocated funding and essential office resources from Plaintiff.

203. Plaintiff made repeated and documented requests for information and access to budget allocations, status updates, and necessary office resources.

204. Management, including but not limited to Mr. Afman and the Budget Team, consistently failed to respond to Plaintiff's requests or provide the required support.

205. The resources withheld from Plaintiff included, but were not limited to, conference fees, booth fees, travel funds, and contract support.

206. Plaintiff made numerous attempts via email and other communications to secure these resources, all of which were either ignored or denied without legitimate justification.

207. As a direct result of the withholding of resources, Plaintiff was unable to attend or represent FEMA at professional conferences.

208. Plaintiff lost access to contract support that was critical to her role as Business Operations Chief.

209. Plaintiff was prevented from fulfilling her job responsibilities due to the lack of necessary funding and resources.

210. The withholding of these resources materially hindered Plaintiff's ability to perform her duties and manage her office's operations.

211. The denial of funding and support also resulted in the loss of professional opportunities, diminished Plaintiff's authority, and caused reputational harm within FEMA and the broader law enforcement community.

212. Plaintiff alleges that the actions of management in withholding funding and resources were motivated by discriminatory animus based on her race (African American) and by retaliatory intent in response to her prior protected EEO activity, including the filing of complaints in 2016 and 2019.

213. Plaintiff's office was the only office in the division with minorities, and management officials were aware of her protected status and prior complaints.

214. Plaintiff was treated differently than similarly situated employees outside her protected class or who had not engaged in protected activity, as those employees did not experience comparable denials of resources or support.

215. The withholding of funding and resources constitutes a materially adverse employment action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

216. Defendant's conduct was intentional, willful, and taken with reckless disregard for Plaintiff's federally protected rights.

217. As a result, Plaintiff suffered tangible harm, including the inability to perform her job effectively, loss of contract support, impeded professional advancement, emotional distress, and reputational damage.

218. Plaintiff seeks all available relief for this claim, including but not limited to injunctive relief, compensatory damages, back pay, and attorney's fees.

**Diminution of Authority**

219. Defendant, through its agents and employees, engaged in a persistent and coordinated pattern of conduct that resulted in the substantial diminution of Plaintiff's decision-making authority and direct interference with her job responsibilities as Business Operations Chief.

220. This claim is asserted as a separate and independent cause of action, based on the cumulative and synergistic effect of management's actions, which collectively undermined Plaintiff's ability to fulfill the essential functions of her position and eroded her professional standing within the agency.

221. Management's conduct included, but was not limited to, excluding Plaintiff from critical professional opportunities by failing to pay her registration fee for the National Asian Peace Officer Association Conference and failing to purchase a booth for the same event, thereby preventing her from representing FEMA and engaging with key external stakeholders.

222. Management withheld allocated funding, contract support, and essential office resources, despite Plaintiff's repeated and documented requests, which impeded her ability to manage her office's operations and execute her responsibilities.

223. Management neglected to provide timely and substantive performance evaluations, which are necessary for career advancement, eligibility for promotions, and maintaining a record of satisfactory job performance.

224. Management cancelled and refused to approve Plaintiff's official travel to meet with law enforcement personnel, resulting in missed opportunities to build relationships, participate in professional development, and fulfill core job duties.

225. The cumulative effect of these actions was to marginalize Plaintiff within the agency, erode her authority, undermine her credibility, and deter her from engaging in further protected activity.

226. Plaintiff alleges that the diminution of her authority and interference with her job responsibilities were motivated by discriminatory animus based on her race and by retaliatory intent in response to her prior protected EEO activity.

227. Defendant's conduct constitutes unlawful interference with Plaintiff's job responsibilities and a diminution of her authority, in violation of federal law.

228. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer significant harm, including lost professional opportunities, emotional distress, reputational damage, and impeded career advancement.

229. Plaintiff seeks all available remedies for this claim, including but not limited to injunctive relief, compensatory damages, back pay, and attorney's fees.

230. These actions by Defendant were not isolated incidents, but rather formed a pattern of deliberate marginalization and exclusion of Plaintiff from the authority, autonomy, and support inherent in her position as Business Operations Chief.

231. Management's persistent refusal to respond to Plaintiff's inquiries, approve necessary expenditures, or provide essential resources created an environment in which Plaintiff was systematically stripped of her ability to exercise the responsibilities and authority of her role.

232. Defendant's denial of opportunities for Plaintiff to attend and represent FEMA at professional conferences, the removal of contract support, and the neglect of performance evaluations all served to diminish Plaintiff's role and influence within the agency.

233. As a result of this pattern of conduct, Plaintiff's credibility and reputation were undermined both within FEMA and in the broader law enforcement community.

234. Plaintiff's ability to make decisions, manage her team, and advocate for her office's needs was eroded by Defendant's actions.

235. Defendant's conduct deterred Plaintiff from engaging in further protected activity by signaling that such conduct would be met with adverse consequences.

236. Plaintiff suffered significant emotional distress, professional stagnation, and reputational harm as a direct and proximate result of Defendant's actions.

237. Plaintiff alleges that the diminution of her authority and interference with her job responsibilities were motivated by discriminatory animus based on her race (African American) and by retaliatory intent in response to her prior protected EEO activity.

238. The responsible management officials, including but not limited to Jeffery Afman, Michelle Carter, Sarah Boerchig, and the Budget Team, were aware of Plaintiff's protected status and prior complaints, and their conduct was designed to marginalize Plaintiff and deter her from engaging in further protected activity.

239. The pattern of conduct described herein constitutes a materially adverse employment action under Title VII and other applicable federal statutes.

240. Defendant's actions deprived Plaintiff of the ability to perform her job effectively, advance her career, and maintain her professional reputation and standing.

241. These harms are actionable and entitle Plaintiff to relief as set forth herein.

242. Plaintiff seeks all available remedies for this claim, including but not limited to injunctive relief, compensatory damages, back pay, and attorney's fees.

**Count II - Retaliation in Violation of 42 USCS § 2000e-3**

243. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 226 as if fully set forth herein          .

244. Plaintiff engaged in protected activity.

245. Plaintiff filed formal EEO complaints in 2016 and 2019, which were known to management officials, including but not limited to Jeffery Afman, Michelle Carter, and Sarah Boerchig.

246. Tarrant attested that in approximately January, 2024, Belanger told him that she had filed discrimination complaints against her supervisors.

247. Plaintiff suffered adverse employment actions.

248. Defendant, through its agents and employees, failed to pay Plaintiff's registration fee for the National Asian Peace Officer Association Conference, failed to purchase a booth for the same conference, neglected to address Plaintiff's performance plan ratings for multiple quarters, cancelled and refused to approve Plaintiff's official travel to meet with law enforcement personnel, withheld allocated funding and office resources necessary for Plaintiff to perform her duties, and issued a permanent official reprimand.

249. There is a causal connection between Plaintiff's protected activity and the adverse actions.

250. Management officials, including Jeffery Afman, Michelle Carter, and Sarah Boerchig, were aware of Plaintiff's prior EEO activity.

251. The adverse actions began after the retirement of Plaintiff's supportive supervisor, Mr. Hylton.

252. Connections between various FEMA officials suggest a pattern of retaliation, including Richard Manion who previously worked in offices where Plaintiff had filed EEO complaints.

253. Elan Darlington, former Office of the Administrator Executive Officer, intervened in Plaintiff's active EEO case.

254. The permanent official reprimand was issued after Plaintiff raised grievances regarding her performance ratings and other retaliatory actions.

255. Plaintiff's travel card was delinquent, forcing her to pay for a trip, and the agency didn't reimburse her for over a month until an amended EEO complaint was filed.

**Prayer for Relief**:

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant, and award the following relief:

a. A declaratory judgment that Defendant's actions violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964 and other applicable federal statutes.

b. Preliminary and permanent injunctive relief prohibiting Defendant, its agents, employees, and representatives from engaging in further discrimination, retaliation, or interference with Plaintiff's job responsibilities and authority.

c. Reinstatement or restoration of all lost job responsibilities, authority, and privileges, or, in the alternative, an award of front pay for a period deemed just and reasonable by the Court.

d. An award of back pay, including lost wages, benefits, and other remuneration, from the date of the adverse actions through the date of judgment, together with interest thereon.

e. Compensatory damages for emotional distress, reputational harm, and other non-economic injuries suffered as a result of Defendant's unlawful conduct.

f.  An award of reasonable attorney's fees, expert fees, litigation expenses, and costs incurred in connection with this action.

g.  An award of pre-judgment and post-judgment interest as allowed by law.

h.  Such other and further relief as the Court deems just and proper.

i.  Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

**Verification:**

I.    Demaris Belanger herein verifies under penalties of perjury to the truth and

accuracy of the facts in this complaint.


Demaris Belanger
November 04, 2025


Respectfully Submitted,


Morris E. Fischer, Esq.
Morris E. Fischer, LLC
11510 Georgia Ave, Suite 235
Silver Spring, MD 20902
301-328-7631 phone
301-328-7638 fax
morris@mfischerlaw.com
Attorney for Plaintiff

37